IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| DAVID M. JESSE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 14-CV-218-W-DGK-SSA |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

Plaintiff David M. Jesse petitions for review of an adverse decision by the Commissioner of Social Security ("Commissioner"). Plaintiff applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–434, and supplemental security income under Title XVI of the Act, 42 U.S.C. §§ 1381–1383f. An administrative law judge ("ALJ") found Plaintiff had multiple severe impairments, including intermittent explosive disorder, anxiety disorder not otherwise specified, and post-traumatic stress disorder ("PTSD"), but retained the residual functional capacity ("RFC") to perform work as a linen room attendant, order filler, or furniture wiper.

Because the ALJ's opinion is supported by substantial evidence on the record as a whole, the Commissioner's decision is AFFIRMED.

**Background**

A complete summary of the record is presented in the parties' briefs and repeated here only to the extent necessary. Plaintiff filed his pending applications on October 17, 2011, alleging a disability onset date of June 18, 2011. After the Commissioner denied his applications, Plaintiff requested an ALJ hearing. On June 27, 2013, the ALJ found that Plaintiff

was not disabled. The Social Security Administration Appeals Council denied Plaintiff's request for review on February 3, 2014, leaving the ALJ's decision as the Commissioner's final decision. Plaintiff has exhausted all administrative remedies and judicial review is now appropriate under 42 U.S.C. §§ 405(g), 1383(c)(3).

## Standard of Review

A federal court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010). The court must "defer heavily" to the Commissioner's findings and conclusions. *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice, and a decision is not outside this zone simply because the court might have decided the case differently were it the initial finder of fact. *Buckner*, 646 F.3d at 556.

## Discussion

The Commissioner follows a five-step sequential evaluation process[1] to determine whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by

---

[1] "The five-step sequence involves determining whether (1) a claimant's work activity, if any, amounts to substantial gainful activity; (2) his impairments, alone or combined, are medically severe; (3) his severe impairments meet or medically equal a listed impairment; (4) his residual functional capacity precludes his past relevant work; and (5) his residual functional capacity permits an adjustment to any other work. The evaluation process ends if a determination of disabled or not disabled can be made at any step." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014); *see* 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g). Through Step Four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches Step Five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009).

reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A).

Plaintiff argues that the ALJ erred: (1) at Steps Four and Five by improperly weighing the evidence; and (2) at Step Five by identifying other work for him that conflicted with his RFC. Neither argument has merit.

### I. The ALJ properly assessed the record evidence.

Plaintiff first attacks how the ALJ weighed two sets of evidence in formulating his RFC: medical opinions, and Plaintiff's own testimony.

#### A. The ALJ properly weighed the medical opinions.

The ALJ gave little weight to the opinions of treating psychologist Steve Daily, M.S. ("Mr. Daily"), and treating psychiatrist Zafar Mahmood, M.D. ("Dr. Mahmood"). R. at 22–23. In their place, the ALJ gave great weight to the opinion of consultative psychologist Nina Epperson, M.S. ("Ms. Epperson"). R. at 17, 21–22. Plaintiff argues this was error.

A treating source's opinion is generally entitled to substantial weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). However, such an opinion "does not automatically control or obviate the need to evaluate the record as a whole." *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). Rather, an ALJ may "discount or disregard a treating physician's opinion where other medical assessments are supported by better or more thorough medical evidence." *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014) (internal quotation marks omitted). In determining how much weight to accord a physician's opinion, the ALJ must take into account a variety of considerations; for example, whether the opinion is supported with facts and evidence and whether the opinion is consistent with other evidence and opinions. 20 C.F.R. §§ 404.1527(c), 416.927(c); *Renstrom v. Astrue*, 680 F.3d 1057, 1065 (8th Cir. 2012).

3

The ALJ first discounted the opinion of Mr. Daily, who opined that Plaintiff's aggressive tendencies and PTSD precluded him from maintaining full-time employment. R. at 438–39. The ALJ properly rejected this opinion for two reasons. First, Mr. Daily's opinion that Plaintiff could not hold a full-time job impermissibly decided the ultimate question of disability reserved for the ALJ. *See Qualls v. Apfel*, 158 F.3d 425, 428 (8th Cir. 1998) ("[T]he hearing examiner need not adopt the opinion of a physician on the ultimate issue of a claimant's ability to engage in substantial gainful employment." (internal quotations marks omitted)). Second, Mr. Daily's statement does not account for salient evidence elsewhere in the record, such as Plaintiff's statements to a social worker that: he was "making progress in dealing with his PTSD," R. at 375; "his anxiety and anger had been better and he hadn't had any recent outbursts," R. at 379; and "he was handling stress and his anger better because there weren't as many people around him," R. at 385; *see Wildman v. Astrue*, 596 F.3d 959, 964–65, 967–68 (8th Cir. 2010) (permitting the ALJ to discount the opinion of a doctor who did not have access to certain relevant evidence).

Next, the ALJ properly declined to rely on Dr. Mahmood's mental RFC assessment, which claimed Plaintiff had certain marked and moderate limitations. R. at 431–33. First, the assessment, accompanied by a minimalist narrative response, is conclusory. *See Toland*, 761 F.3d at 937 ("A conclusory checkbox form has little evidentiary value when it cites no medical evidence, and provides little to no elaboration." (internal quotation marks and alterations removed)). Second, Dr. Mahmood's opinion is inconsistent with Plaintiff's own statements that he was doing well in his jobs and enjoying his work, particularly when the instructions were clear and he did not have to work with many people. R. at 375, 381, 414–17, 453; *see Wildman*, 596 F.3d at 967–68.

Third, Dr. Mahmood's RFC assessment contradicts other medical evidence, such as Ms. Epperson's findings that Plaintiff's thoughts were organized and goal-directed, his speech was within normal limits, he was alert and fully oriented, he was able to perform recall tasks without difficulty, and he could understand and remember instructions and sustain concentration and persist with tasks despite his mental impairments. R. at 397; *see Grable*, 770 F.3d at 1201 (permitting the ALJ to discount diagnoses that contradicted other medical opinions on the record). Finally, Dr. Mahmood's opinion that Plaintiff would have to be absent from work more than three times per month due to his impairments is not grounded in any objective medical evidence. *See Perks v. Astrue*, 687 F.3d 1086, 1093–94 (8th Cir. 2012) (rejecting the opinion of a treating physician who reviewed the claimant's medical history and complaints but did not indicate how his conclusions were supported by clinical data).

Having rejected Mr. Daily's and Dr. Mahmood's opinions, the ALJ instead relied on the opinion of Ms. Epperson. Plaintiff argues that the ALJ should not have given Ms. Epperson's opinion significant weight because she examined Plaintiff on only one occasion. "When one-time consultants dispute a treating physician's opinion, the ALJ must resolve the conflict between those opinions." *Cantrell v. Apfel*, 231 F.3d 1104, 1107 (8th Cir. 2000). The ALJ may resolve it in favor of the one-time consultant when her opinion is "supported by better or more thorough medical evidence." *Id.* (internal quotation marks omitted).

The ALJ amply explained why Ms. Epperson's opinion was better supported than Mr. Daily's or Dr. Mahmood's. Unlike the latter two sources, Ms. Epperson made specific clinical findings, such as the results of her cognition tests. R. at 397. She explained the basis for her suggested limitations in much greater detail than the treating sources did. R. at 395–401.

Therefore, the ALJ could freely elevate Ms. Epperson's assessment over those of Mr. Daily and Dr. Mahmood. *See Cantrell*, 231 F.3d at 1107.

Although Plaintiff views the medical evidence differently, "[i]t is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians." *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001). The Court holds that the ALJ properly weighed the medical opinions in formulating Plaintiff's RFC.

Plaintiff argues that if the ALJ was going to reject Mr. Daily's and Dr. Mahmood's opinions, then she had an obligation to contact them for clarification. "An ALJ is not required to seek clarifying statements from a treating physician unless a crucial issue is undeveloped." *Grable*, 770 F.3d at 1201. Substantial record evidence, including Ms. Epperson's opinion, gave the ALJ an adequate portrait of Plaintiff's ability to work. Mr. Daily's and Dr. Mahmood's opinions are not unclear or incomplete—they are merely inconsistent with that substantial evidence. Therefore, the ALJ permissibly declined to re-contact Plaintiff's treating sources. *See Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) ("[A] lack of medical evidence *to support a doctor's opinion* does not equate to underdevelopment of the record as to a claimant's disability . . . .").

### B. The ALJ provided several proper reasons for partially discounting Plaintiff's credibility.

The ALJ partially discounted Plaintiff's claims that he was unable to work due to his major depressive disorder, generalized anxiety, and PTSD. R. at 19–21. Plaintiff claims the ALJ erred in doing so.

The ALJ must examine the claimant's credibility to properly assess his RFC. *Pearsall*, 274 F.3d at 1217–18. The ALJ must base her credibility findings on the entire record, including medical records and statements by the claimant. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

6
Case 4:14-cv-00218-DGK   Document 18   Filed 02/13/15   Page 6 of 11

The district court must defer to the ALJ's credibility findings "provided that this determination is supported by 'good reasons and substantial evidence.'" *Grable*, 770 F.3d at 1202.

Here, the ALJ articulated at least three well-supported reasons for discounting Plaintiff's credibility. First, Plaintiff admitted on numerous occasions that his medications help stabilize and control his symptoms, and that therapy has improved his ability to deal with problems. R. at 374, 383, 393, 396. Although his doctors had to constantly monitor, adjust, and substitute his medication types and dosages, the record indicates that those corrections were each successful. *E.g.* R. at 443 (in a "medication management" session postdating most instances of medication difficulties, Plaintiff telling Dr. Mahmood that he was "doing well" and "tolerating [the medication] well"); *see Davidson v. Astrue*, 578 F.3d 838, 846 (8th Cir. 2009) (holding that a mental affliction like depression that is "controllable or amenable to treatment do[es] not support a finding of disability").[2]

Second, Plaintiff was able to perform part-time work, for instance driving a truck three days a week. R. at 443, 452–53, 462. He denied to his social worker "experiencing any symptoms during [this] work or outside of work." R. at 453. Relatedly, he reported continuing to look for other work. R. at 379, 444. The ALJ could fairly use this evidence to partially dismiss Plaintiff's claims that he could not hold a job. *See Dunahoo v. Apfel*, 241 F.3d 1033,

---

[2] Plaintiff argues these reports of "doing well" are deceptive and cannot constitute substantial evidence, because "it is inherent in psychotic illnesses that periods of remission will occur, [so] such remission does not mean that the disability has ceased." *Andler v. Chater*, 100 F.3d 1389, 1393 (8th Cir. 1996) (internal quotation marks and alterations removed). *Andler*'s broad maxim does not undermine the ALJ's decision here for two reasons. First, *Andler* was a Step One case, in which the ALJ erred by finding the claimant's ability to briefly hold a part-time job in between hospitalizations constituted "substantial gainful activity." *Id.* at 1392–94. That is not exactly the analysis necessary here at Steps Four and Five. R. at 15. Second, the claimant in *Andler* had only two instances of remission, unlike Plaintiff, who self-reported improvement on multiple occasions. *See Andler*, 100 F.3d at 1393.

7

1039 (8th Cir. 2001) ("Seeking work and working at a job while applying for benefits, are activities inconsistent with complaints of disabling pain.").[3]

Third, Plaintiff offered conflicting testimony. He testified that he sometimes reacts violently to "men being hostile," R. at 41, and that he once punched a hole through the wall when a supervisor yelled at him. R. at 40. However, he reported successfully dealing with and spending time with his family and friends, and more often than not reported doing well at his various jobs. R. at 374–77, 394, 414, 416, 452. The ALJ could find Plaintiff's inconsistencies adversely affected his credibility. *See Trenary v. Bowen*, 898 F.2d 1360, 1365 (8th Cir. 1990) (affirming an ALJ's decision not to give the claimant's subjective testimony conclusive weight because of "inconsistencies in her reports of pain and functional limitations").

Finally, in addition to the above-described testimony, Plaintiff reported that he "tend[s] to not socialize with anyone" and "tend[s] to be like a recluse and be by [him]self." R. at 253–54. However, he indicated his daily activities comprised playing video games, cooking complete meals, performing household repairs, shopping for food, reading, sewing, electronics repair and construction, and playing roleplaying games with his friends. R. at 247–53, 396. He reported living with his four-year-old daughter. R. at 396. The inconsistency between his daily activities and all of his subjective complaints was fair grounds for the ALJ to partially discount his subjective testimony. *See Roberson v. Astrue*, 481 F.3d 1020, 1025 (8th Cir. 2007) (discrediting the testimony of a claimant who, somewhat similarly to Plaintiff, "took care of her eleven-year-old child, drove her to school and did other driving, fixed simple meals for them, did housework, shopped for groceries, and had no difficulty handling money[, and, a]fter she separated from her husband, . . . continued to visit with him and with her son, who was in her husband's custody).

---

[3] Plaintiff's work is relevant to a credibility determination even if it does not rise to the level of substantial gainful activity at Step One. *See Toland*, 761 F.3d at 936 n.4.

For these reasons, the Court defers to the ALJ's decision regarding Plaintiff's credibility because that determination is supported by "good reasons and substantial evidence." *Grable*, 770 F.3d at 1202.

**II. The ALJ fairly inferred from the VE's testimony that he intended to deviate from the default qualifications embodied in the *Dictionary of Occupational Titles*.**

Plaintiff lastly argues that the ALJ did not identify any jobs that he could perform given his RFC. The ALJ found Plaintiff's RFC precluded him from working jobs where he would "be expected to understand or remember or [carry out] detailed instructions." R. at 18. The ALJ at Step Five determined that Plaintiff could perform work as an order filler or furniture wiper. R. at 24. She did so based on the testimony of a vocational expert ("VE"), who explained that her testimony was not entirely consistent with the *Dictionary of Occupational Titles* ("*DOT*"):

> There have been some supplements such as using independent judgment and changes of location, low stress and then the contact with co-workers and supervisors. That's been based on my 13 years experience providing various vocational services such as job placement, job coaching, for example. Those things were not addressed in the DOT or the companion publications.

R. at 51.

According to the *DOT*, an order filler and a furniture wiper should have a reasoning level of two on a six-point scale. *See DOT* § 922.687-058, 1991 WL 688132 (order filler) (4th ed. rev. 1991); *id.* § 742.687-010, 1991 WL 680257 (furniture wiper). A reasoning level of two requires the worker to "[a]pply commonsense understanding to carry out *detailed* but uninvolved written or oral instructions." *Id.* app. C, 1991 WL 688702 (emphasis added). Because the ALJ had earlier found he could not follow detailed instructions, Plaintiff claims this is a conflict that invalidates the ALJ's Step Five decision.

Although the *DOT* definitions are a helpful starting point at Step Five, "a claimant's reliance on the [*DOT*] as a definitive authority on job requirements is misplaced because [*DOT*]

9

definitions are simply generic job descriptions that offer the approximate maximum requirements for each position, rather than their range." *Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010). For instance, "the Level 2 reasoning definition is an upper limit across all jobs in the occupational category, not a requirement of every job within the category." *Id.* Accordingly, a VE may rebut the default *DOT* qualifications so long as she explains her deviation. *Jones*, 619 F.3d at 978.

Here, the ALJ explicitly asked the VE about jobs that did not involve detailed instructions. The VE responded with jobs that the *DOT* states involve detailed instructions, and noted her testimony in general was not entirely consistent with the *DOT*. Although the VE's comments did not specifically reference detailed instructions, "[t]here is nothing in the record to suggest the vocational expert ignored the reasoning limitations in the [ALJ's] hypothetical in determining that the listed occupations encompassed suitable jobs." *Moore*, 623 F.3d at 604. Thus, the VE's general comment that she was deviating permitted the ALJ to presume the VE was tailoring her opinions to include only those jobs which fell within Plaintiff's RFC, notwithstanding their designation in the *DOT* as positions which ordinarily require up to a reasoning level of two. *See id.* at 604–05 ("[T]he ALJ could properly assume that the expert framed his answers based on the factors the ALJ told him to take into account." (quoting *Whitehouse v. Sullivan*, 949 F.2d 1005, 1006 (8th Cir. 1991))). The VE's testimony thus provides substantial evidence reflecting that the ALJ met her burden in determining that Plaintiff could perform other work. *Cf. McPheeters v. Astrue*, No. 4:12-CV-137-DGK-SSA, 2013 WL 523674 (W.D. Mo. Feb. 12, 2013) (remanding where the VE deviated from the *DOT* but testified at the hearing that his testimony was completely consistent with the *DOT*).

Plaintiff also challenges the third occupation the VE selected for someone with his RFC, a linen room attendant. *See DOT* § 222.387-030, 1991 WL 672098. Even assuming the VE's selection of this job was erroneous, the VE's selection of other, proper jobs renders such an error harmless. *See Grable*, 770 F.3d at 1202 ("Although the vocational expert recommended the job of flat work finisher despite [the claimant's] inability to perform such work, one mistaken recommendation does not devalue the rest of her opinion."). This point is denied.

## Conclusion

Because substantial evidence on the record as a whole supports the ALJ's opinion, the Commissioner's decision denying benefits is AFFIRMED.

**IT IS SO ORDERED.**

Date:  February 13, 2015  /s/ Greg Kays
GREG KAYS, CHIEF JUDGE
UNITED STATES DISTRICT COURT